AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
JUN 0 3 2019
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___PC.___ DEP CLK

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>Information Associated with the Subject Account(s) Stored at Premises Controlled by Facebook, Inc. | Case No. 5:19 mj 1663-JG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Poss. with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distrib. and Poss. with Intent to Distribute Controlled Substances |
| 18 U.S.C. § 1512 | Tampering and Attempted Tampering with a Witness |

The application is based on these facts:

See attached affidavit.

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

On this day, __T.J. SMITH__ appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Application for a Search Warrant.

Task Force Officer TJ Smith, FBI
*Printed name and title*

Date: 3 JUNE 2019

*Judge's signature*

City and state: Raleigh, North Carolina

James E. Gates, U.S. Magistrate Judge
*Printed name and title*

SL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE SUBJECT ACCOUNT(S) STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Case No. 5:19mj1663.JG<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, T.J. Smith, a Task Force Officer (TFO) duly deputized by the Federal Bureau of Investigation (FBI), United States Department of Justice, being first duly sworn, depose and state under oath as follows:

**INTRODUCTION**

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Police Detective with the Fayetteville, NC, Police Department (FPD) assigned to the Special Investigations Division (SID) as a narcotics detective where I have been assigned since January of 2014. In October of 2014, I was assigned to the HSI/ICE Raleigh, NC, Resident Office as a Task Force Officer until July of 2016. During my assignment as a narcotics detective in the SID, I investigated drug conspiracy cases using the electronic interception of telephonic communications and the use of vehicular GPS systems to supplement physical surveillance. I am currently

1

a Task Force Officer with the Federal Bureau of Investigation (FBI). I have been so employed since July 2016. I am currently assigned to the Fayetteville, NC Resident Agency. I have over nine (9) years of combined law enforcement experience.

3. During both my assignments to the HSI/ICE Raleigh, NC Resident Office and FBI Fayetteville, NC Resident Agency, I have also spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, methods, and practices that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods of investigating and dismantling such organizations.

4. As a FPD Narcotics Detective, I have participated in three (3) prior investigations that have utilized court-ordered interception of wire and electronic communications as an investigative tool to target domestic Drug Trafficking Organizations (DTOs). I am therefore familiar with the lawful use of electronic and wire surveillance equipment in investigations of narcotics distribution. Through these experiences, I have learned how large-scale drug trafficking organizations operate. I have also become familiar with street terminology relating to the distribution of controlled substances.

5. In connection with my official FBI Task Force Officer duties, I investigate criminal violations of federal drug laws and related offenses, including, but not limited to, violations of 21 U.S.C. §§ 841, 843, 846, 952, 960, and 963, and 18 U.S.C. §§ 1956 and 1957. While part of the FBI Sandhills Criminal Enterprise Task Force (SCETF), I have participated in three (3) investigations involving the

monitoring and recording of court authorized Title III interceptions; including the interception of a total of thirteen (13) target telephone lines during the three (3) investigations.

6. In my employment, I have conducted numerous analyses of telephone-billing records for telephones used by narcotics traffickers. Consequently, I am familiar with the ways in which drug traffickers operate their illegal enterprise, including, but not limited to, their use of cellular telephones and their use of numerical codes and code words to conduct their transactions. I know that drug trafficking is often furthered by utilizing multiple cellular phones, multiple insulated contacts, pre-paid cellular phones, and phones designated to be used only for incoming or outgoing calls, which is also known as compartmentalization. I know that drug traffickers frequently use cellular telephones subscribed to false names or to persons other than the user. The use of telephones in this manner is designed to help avoid detection by law enforcement.

7. I know, based upon my training and experience, that drug trafficking and money laundering organizations routinely utilize a number of other operational techniques. These practices are designed and implemented to achieve two goals: first, the successful facilitation of the organization's illegal activities, which consists of the transportation and distribution of controlled substances and the subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

SL

8. I am familiar with the methods used by traffickers of cocaine, methamphetamine, heroin, marijuana, and other controlled substances to conduct their business, including, but not limited to: methods of importing and distributing these drugs; use of numerical codes and code words to conceal the illegal nature of their transactions; and use of firearms to protect themselves, their drugs, and drug proceeds.

9. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested data, I have not included every detail of every aspect of the investigation; rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not; however, excluded any information known to me that would negate a determination of probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigative agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10. As your affiant, I make this affidavit in support of an application for a search warrant for information associated with an investigation into the conduct of **Lloyd Earnest MITCHELL, Jr.** The present request is to search and seize information contained within the following online accounts maintained by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California (hereinafter "the Subject Accounts"): **USER ID 100004016068694; and**

4

USER NAME lloyd.mitchell.587.[1] The information to be searched is further described in the following paragraphs and in Attachments A and B. The present affidavit provides information establishing probable cause to believe that these accounts contain evidence of violations of Title 18, United States Code, Section 1512 (tampering and attempted tampering with a witness, victim, or an informant) and Title 21, United States Code, Sections 841(a)(1) and 846 (distribution and/or possession with the intent to distribute methamphetamine, marijuana and oxycodone, and conspiracy to distribute and possess with intent to distribute methamphetamine, marijuana, and oxycodone).

11. The statements contained in this affidavit are based on information I have learned through my own investigation; my background, training, and experience as a Task Force Officer; the investigation of other Special Agents and Task Force Officers of the Federal Bureau of Investigation; local law enforcement officers, and investigative assistants, collectively hereinafter referred to as the INVESTIGATIVE TEAM; in addition to records and other evidence obtained during the course of this investigation; and interviews with individuals as set forth in this affidavit. This affidavit does not contain all of my knowledge about this matter. The present affidavit contains the necessary information to establish probable cause to believe that evidence of a federal crime is located within the subject accounts.

---

[1] The present request is made pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure.

## PROBABLE CAUSE

12. On January 4, 2017, pursuant to a search warrant signed by Superior Court Judge C. Hill, members of the Fayetteville Police Department's Narcotics Unit and Fayetteville Police Department's Emergency Response Team executed a search warrant at Lloyd Earnest MITCHELL's residence located at 2711 Rivercliff Road Fayetteville, North Carolina. Upon members of the Emergency Response Team making entry inside of the residence, it was determined that MITCHELL had attempted to flee into the attic of his residence and his feet had fallen through the sheet rock in the ceiling of the residence.

13. MITCHELL was taken into custody after being removed from the attic space by members of the Fayetteville Police Department's Emergency Response Team. Upon search of the residence, officers located two (2) assault style rifles, marijuana, oxycodone and MDMA within the attic space which MITCHELL had fled to. MITCHELL was charged on state charges on this date. MITCHELL later posted bond on these state charges.

14. On May 8, 2018, the grand jury for the Eastern District of North Carolina charged the Defendant with possession with intent to distribute a quantity of methamphetamine, oxycodone, and marijuana (Count One) and possession of firearms in furtherance of a drug trafficking crime (Count Two). *See United States v. Lloyd Ernest Mitchell, Jr.*, 5:18-CR-175-D-1.

15. Lloyd MITCHELL was arrested in June 2018 on the federal indictment. Following a hearing on June 20, 2018, the Honorable Judge Robert T. Numbers II released MITCHELL with conditions of release. [D.E. 20].

16. Arraignment is scheduled for the June 17, 2019 term of court. [D.E. 41]. The Defendant has indicated through defense counsel that he intends to plead not guilty and go to trial.

### MITCHELL's Threats Against, and Attempted Tampering With, Federal Witnesses

17. On April 16, 2019, the Government produced additional discovery to the Defendant with statements made by cooperating sources of information (hereinafter referred to as "CS-1" and "CS-2").

18. Shortly afterwards, members of the INVESTIGATIVE TEAM became aware that MITCHELL was utilizing his social media Facebook account to publicly identify and threaten the individuals MITCHELL believes to be CS-1 and CS-2. Members of the INVESTIGATIVE TEAM were familiar with MITCHELL's social media account and know him to utilize Facebook via user name **lloyd.mitchell.587**; with Facebook user ID: **100004016068694.** I have reviewed the account with that user name and that user ID, and I have confirmed that the account contains photographs of MITCHELL.

19. On April 20, 2019, your affiant observed a Facebook post which had been submitted by Facebook Page username "Duseline Dougk", who the affiant knows from training and experience to be Ronald Douglas MICHAUX Jr., who is currently serving a state sentence of approximately 20 years in a South Carolina Correctional Facility

7

SL

for drug and firearm violations. MICHAUX has access to a contraband cellular telephone and is routinely observed utilizing the "Facebook live" function of his social media account and can be observed consuming marijuana within his prison cell. MICHAUX utilizes social media to stay in contact with members of the Fayetteville area and MICHAUX was known, based on previous independent investigations, to be a validated UBN gang member as well as a distributor of controlled substances in the Fayetteville, NC area. The post by MICHAUX—which appears to have been posted in December 2018—stated, "**Idgaf who u told on, how long ago u told or y u told!!!!!!!!!!!!! You's a fuckin rat!!**" Based on my training and experience, I know that "Idgaf" is slang for "I don't give a fuck." I believe MICHAUX was stating that any person who "told on" someone else, regardless of how long ago or the reason it occurred, was a "rat," which is common slang for a person who cooperates with law enforcement.

20. On April 20, 2019, MITCHELL used the Subject Account(s) to add a comment to MICHAUX's post. MITCHELL stated, "**Yep [CS-1] and [CS-2] became federal informants in 2019 facts I got the paperwork with the statements.**" Based on my training and experience, I believe that MITCHELL was attempting to publicly identify two individuals MITCHELL believed to be federal cooperators. I know that defendants frequently attempt to publicly identify suspected "rats" (i.e., witnesses) in an attempt to threaten them and/or prevent them from testifying or providing additional information against them, and I believe this was MITCHELL's goal.

21. I also know that individuals with Facebook accounts often send non-public messages to other Facebook users, and those messages often contain additional evidence of criminal activity, including attempts to threaten and intimidate witnesses.

### MITCHELL's Continued Drug Dealing

22. I also believe there is probable cause to believe that MITCHELL is still engaged in drug dealing.

23. For example, CS-1 stated that soon after MITCHELL was released on bond on the state charges associated with this case, MITCHELL boarded up his house—the same house where the search warrant was executed—and returned to his pattern of drug trafficking.

24. Additionally, over the last few months, a separate cooperating source of information ("CS-3") has had regular conversations with MITCHELL regarding MITCHELL's drug dealing activities while MITCHELL is on federal pretrial release.

25. For example, on April 23, 2019, MITCHELL advised CS-3 that he was currently waiting on his marijuana source of supply to re-supply him with a load of marijuana. MITCHELL informed CS-3 that he had been waiting on the source for an extended period of time but expected to be re-supplied in the near future.

26. I am aware that drug dealers often use Facebook accounts to engage in conversations in furtherance of their drug trafficking activities. Based on MITCHELL's willingness to use his Facebook account to publicly identify and threaten individuals who he believes might testify against him in his upcoming trial

on drug charges, and based on MITCHELL's continued drug activity, I submit that there is probable cause to believe MITCHELL's Facebook account will contain evidence of his drug trafficking activity.

27. The affiant believes that MITCHELL has used, will use, and will continue to use his Facebook page in attempt to expose potential witnesses in this investigation in attempt to deter them and others from testifying against him in further legal proceedings.

## INFORMATION REGARDING FACEBOOK

28. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

29. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

30. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook

assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

31. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

32. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in"

11

to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

33. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

34. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account.

Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

35. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

36. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

37. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

13

## AUTHORIZATION REQUEST

38. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

39. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711 and 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Eastern District of North Carolina is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

40. Your Affiant anticipates executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

41. Because Facebook will search its servers at a time convenient to Facebook, I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need for searches to occur outside of daytime hours.

42. I also respectfully request that this Affidavit be filed under seal. This investigation is currently ongoing and the details in this Affidavit, if disclosed prior to the completion of the investigation, could compromise future undercover operations and alert the subjects, both known and unknown, to the existence of the investigation.

Respectfully submitted,

T.J. Smith
Task Force Officer
Federal Bureau of Investigation

On this 3RD day of ~~May~~ June, 2019, Task Force Officer T.J. Smith appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this affidavit.

HON. JAMES E. GATES
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following accounts ("the Subject Accounts"):

**USER ID 100004016068694;**
**USER NAME lloyd.mitchell.587;**

information that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

1

# ATTACHMENT B

## Particular Things to be Searched and Seized

### I. Information to be disclosed by Facebook ("the Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the Subject Accounts listed in Attachment A:

(a) All subscriber information, including subscriber names, email addresses, addresses, telephone numbers, screen names, lists of "friends," account numbers, status of accounts, duration of account, means and source of payment of any service (including any credit card or bank account number), and detailed billing records;

(b) All contact and personal identifying information, to include the full names, user identification numbers, birth dates, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(c) A complete log of all activity relating to the accounts, including dates, times, and IP addresses;

(d) All records of subscriber accounts preferences, including, but not limited to, any address books, friend lists, or member profiles maintained by or related to the accounts;

(e) All communications and messages, including any attachments, associated with the accounts and/or between the account holders and any other individual;

(f) All images, visual depictions, and videos accessed, viewed, downloaded, or posted by the account holders;

(g) All comments posted by the account holders;

(h) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

2

(i) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; videos; networks; photoprint; neoprint; and information about the user's access and use of Facebook applications;

(j) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(k) All "check ins" and other location information;

(l) All IP logs, including all records of the IP addresses that logged into the account;

(m) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(n) All information about the Facebook pages that the account is or was a "fan" of;

(o) All past and present lists of friends created by the account;

(p) All records of Facebook searches performed by the account;

(q) All information about the user's access and use of Facebook Marketplace;

(r) The types of service utilized by the user;

(s) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(t) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

(u) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

I. **Scope of Search and Seizure by the Government**

All information described above in Section I that is:

1. Evidence of any violation of Title 18, United States Code, Section 1512 (tampering and attempted tampering with a witness, victim, or an informant) and/or Title 21, United States Code, Sections 841(a)(1) and 846 (distribution and/or possession with the intent to distribute methamphetamine, marijuana and oxycodone, and conspiracy to distribute and possess with intent to distribute methamphetamine, marijuana, and oxycodone) (subject violations);

For the Subject Accounts listed on Attachment A, this includes but is not limited to information pertaining to the following matters:

a) Communications, including but not limited to posts and messages, discussing the possession, distribution, purchase, or sale of narcotics, as well as the receipt, possession, transfer, or laundering of drug proceeds;

b) Photographs, videos, or other images related to the possession, distribution, purchase, or sale of narcotics, as well as the receipt, possession, transfer, or laundering of drug proceeds;

c) Communications between suspected narcotics traffickers or other information that establishes the existence of a relationship;

d) Communications, images, videos, or other data that appears to identify, threaten, or attempt to identify or threaten any potential witness in a future federal proceeding;

e) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

f) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

g) Evidence of the identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s).
SL